# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER PEMBERTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-00324-CV-W-LMC |
| ) | |
| ANDREW SAUL, COMMISSIONER ) | |
| OF THE SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Christopher Pemberton protectively applied for disability benefits and Supplemental Security Income on May 5, 2014, with an onset date of April 28, 2014. (Doc. #8-6 at 2; Tr. at 388.) His application was subsequently denied. (Doc. #8-45 at 5-16; Tr. at 202-13.) Thereafter, Pemberton requested a hearing in front of an Administrative Law Judge (ALJ). (Doc. #8-5 at 19; Tr. at 216.) The hearing was held on September 3, 2015, and a decision finding Pemberton not disabled was issued on November 12, 2015. (Doc. ##8-3 at 74; 8-4 at 27-35; Tr. at 73, 181-89.) On November 21, 2016, the Appeals Council vacated the ALJ's decision and remanded the matter back to the Administrate Law Judge to review newly filed evidence, and if warranted obtain supplemental evidence from a vocational expert. (Doc. #8-4 at 42–3; Tr. at 196-97.) The ALJ conducted two hearings on remand; one on April 26, 2017, and another on June 6, 2017. (Doc. #8-3 at 119, 140; Tr. at 118, 139.) On June 29, 2017, the ALJ again found Pemberton not disabled. (Doc. #8-3, at 16-27; Tr. at 15-26.) Pemberton now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Doc. #3.)

I. Factual Background

At the time of his application, Pemberton stated that undetermined heart issues and sleep apnea limited his ability to work. (Doc. #8-7 at 5; Tr. at 459.) In his Function Report, Pemberton indicated that his mental handicap and heart disease limited his ability to work, and his sleep apnea affected his ability to sleep. (Doc. #8-7 at 22-3; Tr. at 476-77.) Pemberton noted that his conditions affect his ability to lift, squat, bend, stand, reach, walk, kneel, and climb stairs. (Doc. #8-7 at 27; Tr. at 481.) Additionally, his conditions impact his memory, concentration, understanding and his ability to complete tasks, follow instructions, use his hands, and get along with others. (Doc. #8-7 at 27; Tr. at 481.)

Nina L. Epperson, M.S., submitted a psychological evaluation to aid in the determination of Missouri Health Net eligibility. (Doc. #8-9 at 63-7; Tr. at 880-84.) Ms. Epperson found that "Pemberton does have a mental illness which prevents him from engaging in employment suitable for his age, training, experience or education. It is this examiner's opinion that the expected duration of his incapacity will be 6 to 12 months." (Doc. #8-9 at 67; Tr. at 884.) Ms. Epperson noted that Pemberton's appearance/behavior was good, his speech was within normal limits, he did not appear to have issues with thought content and process, or perception, and his insight and judgment were intact. (Doc. #8-9 at 66-6; Tr. at 882-83.) His mood was normal, but affect was bland. His immediate memory and long-term memory appeared to be intact, but his recent memory was impaired. (Doc. #8-9 at 66; Tr. at 883.) Pemberton "demonstrated moderate impairment with attention and concentration[,]" and impairments in cognition. (Doc. #8-9 at 66; Tr. at 884.) Ms. Epperson noted that Pemberton appeared to "function in the borderline to low-average range of intelligence." (Doc. #8-9 at 66; Tr. at 883.) Ms. Epperson diagnosed Pemberton with panic disorder and noted his GAF score was 55. (Doc. #8-9 at 67; Tr. at 884.)

At the time of the hearing held on September 3, 2015, Pemberton was twenty-six years old. (Doc. #8-3 at 83; Tr. at 82.) He was living with his parents and his two minor children at his parents' house. (Doc. #8-3 at 84-5; Tr. at 83-4.) Pemberton testified that he was told not to drive at that time due to episodes of losing consciousness. (Doc. #8-3 at 86; Tr. at 85.) According to Pemberton, when he exerted himself, such as when he lifted heavy items or moved around, he became dizzy or lightheaded. (Doc. #8-3 at 91-2; Tr. at 90-1.) He occasionally lost consciousness with these episodes. (Doc. #8-3 at 93; Tr. at 92.) Pemberton testified that he had trouble walking due to shortness of breath. (Doc. #8-3 at 96-7; Tr. at 95-6.) Pemberton's doctor diagnosed him with orthostatic hypotension but due to a lack of medical insurance, Pemberton was not taking any medication for the orthostatic hypotension. (Doc. #8-3 at 92; Tr. at 91.) Pemberton used a CPAP machine at night to sleep. (Doc. #8-3 at 99; Tr. at 98.) Additionally, Pemberton testified that he was under the care of a chiropractor for chronic lower back pain and neck pain. (Doc. #8-3 at 95, 99; Tr. at 94, 98.) According to Pemberton, the chronic pain impacts his ability to concentrate on a task. (Doc. #8-3 at 107; Tr. at 106.)

A little less than two years later, on April 26, 2017, when Pemberton again testified before the ALJ, Pemberton indicated that while he still had an active driver's license, he did not drive due to his condition. (Doc. #8-3 at 121; Tr. at 120.) During the hearing, Pemberton described how he struggled with comprehension and pace while at previous jobs. (Doc. #8-3 at 123, 128-30; Tr. at 122, 128-29.) Pemberton was seeing a mental health professional up until September of 2016 but stopped due to lack of insurance. (Doc. #8-3 at 124; Tr. at 123.) He was, however, still taking medication to treat anxiety and depression, as well as a sleep aid. (Doc. #8-3 at 124; Tr. at 123.) Pemberton testified that he could not sit for more than 15-30 minutes at a time before he felt a crunching pain down his spinal column. (Doc. #8-3 at 126-27; Tr. at 125-26.) Standing, however,

3

was much harder for Pemberton and he would often get lightheaded, dizzy, and short of breath. (Doc. #8-3 at 127; Tr. at 126.) On a scale of one to ten, Pemberton described his back pain as a five and sometimes up to a ten and his neck pain as a ten. (Doc. #8-3 at 127; Tr. at 126.) At the time of the hearing, he was not taking pain medication because he did not have insurance. (Doc. #8-3 at 127-28; Tr. at 126-27.) Pemberton also testified about ongoing issues with chest pain. (Doc. #8-3 at 128-29; Tr. at 127-28.) According to Pemberton, he has suffered several strokes and has residual numbness and issues with blood flow. (Doc. #8-3 at 129; Tr. at 128.)

The ALJ scheduled another hearing on June 6, 2017, in order to take testimony from a psychologist, Dr. Jeffrey Fremont. (Doc. #8-3 at 140-42; Tr. at 139-41.) Dr. Fremont noted that upon review of the records, he saw periods of transient disorientation, which can cause psychological problems. (Doc. #8-3 at 144; Tr. at 143.) Dr. Freemont questioned the psychological evaluation conducted by Ms. Epperson, which concluded that Pemberton had a moderate impairment in the areas of attention and concentration. (Doc. #8-3 at 145-46; Tr. at 144-45.) Based on his review of Epperson's report, Dr. Freemont stated he would find that attention and concentration were within normal limits. (Doc. #8-3 at 146; Tr. at 145.) Dr. Freemont saw nothing in Ms. Epperson's report that would lead him to conclude that Pemberton was unable to work. (Doc. #8-3 at 148; Tr. at 147.) After reviewing the records, Dr. Freemont was of the opinion that Pemberton's anxiety and depression were transient in nature and not chronic, and not disabling. (Doc. #8-3 at 149; Tr. at 148.) Additionally, Dr. Freemont did not find support for references in the record to a mood disorder. (Doc. #8-3 at 149; Tr. at 148.) Finally, Dr. Freemont did not find a medically determinable impairment that would last twelve months in part because his mental health impairments were transient in nature and his cognitive functioning is not significantly affected. (Doc. #8-3 at 149-50; Tr. at 148-49.)

## II. Standard of Review

The Commissioner has set forth a five-step sequential evaluation process used in determining whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). In accordance with the regulations, the ALJ is to determine:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004) (internal citations omitted). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). The burden then shifts to the Commissioner to show that the claimant "maintains the residual functional capacity to perform a significant number of jobs within the national economy." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

The Commissioner's determination will be upheld unless it is not supported by substantial evidence on the record as a whole or the Commissioner failed to apply the correct legal standard. *Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2012); *see also* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). "Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Black v. Apfel*, 143 F.3d 383, 385 (8th Cir. 1998). This Court will consider evidence that supports the Commissioner's conclusion and evidence that detract from the Commissioner's conclusion. *Ash v. Colvin*, 812 F.3d 686, 689 (8th Cir. 2016). The Commissioner's conclusion should be affirmed even though a different conclusion could be drawn from the evidence, so long as there is evidence to support the Commissioner's findings. *Johnson v. Colvin*, 788 F.3d 870, 873 (8th Cir. 2015).

III. Discussion

Pemberton argues that the ALJ's residual functional capacity (RFC) assessment as to Pemberton's physical impairments is unsupported by substantial evidence on the record. (Doc. #13 at 20-22.) He further argues that the RFC as to his mental impairments is also unsupported by substantial evidence. (Doc. #13 at 22-23.) Next, Pemberton argues that the ALJ's step four determination was legally flawed. (Doc. #13 at 24-25.) Finally, Pemberton argues that the Commissioner failed to sustain his burden at step five. (Doc. #13 at 25-28.) The Government argues that substantial evidence on the record supports the ALJ's decision and remand is not required. (Doc. #23.)

a. Residual Functional Capacity

The ALJ found that Pemberton has the residual functional capacity to perform light work with the following provisions:

> [Pemberton] is able to sit for 6 hours out of 8 hours; and he can stand and walk for 6 hours out of 8 hours. [Pemberton] is able to lift, carry, push, or pull 10 pounds frequently and up to 20 pounders occasionally. He should never climb ladders, ropes, or scaffolding. [Pemberton] can occasionally climb stairs or ramps; stoop; kneel; crouch; and crawl. He should never drive or be exposed to vibration. Claimant should never be exposed to hazards, such as dangerous machinery and unprotected heights.

(Doc. #8-3 at 21; Tr, at 20.)

A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1). The ALJ "must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). An RFC must be supported by some medical evidence, but it is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). Furthermore, the burden of persuasion regarding the RFC remains

with the claimant. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). The ALJ's duty to develop the record does not require the ALJ to seek additional opinions unless there is a crucial issue undeveloped. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The ALJ in the instant case found that Pemberton's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record . . . ." (Doc. #8-3 at 22; Tr. at 21.) While the record contained evidence that Pemberton sought treatment for a variety of issues including syncope, weakness, and orthostatic hypotension, the ALJ correctly noted that examinations and imaging, with the exception of an abnormal tilt test, were normal. (Doc. #8-3 at 23; Tr. at 22.) The record contains numerous physical examinations of Pemberton, such that the ALJ had a sufficient record to develop the RFC. The Court has reviewed the record and finds that substantial evidence supports the ALJ's RFC as to Pemberton's physical impairments.

With regard to the ALJ's RFC as to Pemberton's mental impairments, the Commissioner concedes that the ALJ failed to include in the RFC Pemberton's moderate limitations in adapting or managing himself. Nevertheless, the Commissioner argues that remand is not necessary because the Vocational Expert testified that an individual with the additional mental limitations would still be able to perform the other jobs identified by the ALJ at Step Four. (Doc. #23 at 10-11.) Pemberton has not argued that remand is still necessary, and this Court is not convinced that remand is necessary. While the ALJ's RFC failed to contain reference to Pemberton's mental limitations, the decision discusses those limitation in various places. Therefore, it is clear that those limitations were contemplated. Furthermore, the end result would not change had those mental impairments been included. Therefore, this Court finds no error.

b. <u>Step Four Findings</u>

Pemberton next argues that the ALJ's step four determination is legally flawed because the ALJ failed to make specific findings as to the physical and mental demands of prior jobs and whether Pemberton had the ability to return to those past jobs given his RFC. (Doc. #13 at 24-5.) At step four, an ALJ "has a duty to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989). The Eighth Circuit has repeatedly stated that an ALJ "'may discharge this duty by referring to the specific job descriptions in the Dictionary of Occupational Titles [(DOT)] that are associated with the claimant's past work.'" *Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013) (quoting *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir.1999)).

This Court recognizes that there are deficiencies in how the ALJ handled his duty at step four. In the three hearings the ALJ conducted, the ALJ failed to include any limitations relating to Pemberton's mental impairments when discussing past relevant work. (Doc. #8-3 at 110, 135-36, 151-54; Tr. at 109, 134-35, 150-53.) Furthermore, the ALJ's discussion of his past work is lacking. Nevertheless, because the ALJ found that Pemberton could perform other jobs existing in the national economy, reversal is not warranted for the ALJ's deficiencies at step four.

c. <u>Step Five Findings</u>

Finally, Pemberton argues that the Commissioner failed to sustain her burden at step five because the vocational expert testified inconsistently with the DOT. (Doc. #13 at 25-8.) Specifically, Pemberton argues that the positions of electronics sub-assembler and small parts assembler would require him to use power tools and machines that are inconsistent with his RFC's

limitation against operating motorized equipment and exposure to hazards, vibrations and dangerous machinery. As the Commissioner points out, however, the DOT states that the conditions of vibrating and moving mechanical parts, as well as other environmental conditions, are not present. DOT 729.684-054, 1991 WL 679729; DOT 706.684-022, 1991 WL 679050; (Doc. #23 at 17-8.) This Court has reviewed the record and finds that the Commissioner's finding at step five is supported by substantial evidence.

IV. Conclusion

After careful review of the record, this Court finds that the Commissioner's decision is supported by substantial evidence. It is therefore,

ORDERED that the Commissioner's decision is affirmed.


*/s/ Lajuana M. Counts*
LAJUANA M. COUNTS
UNITED STATES MAGISTRATE JUDGE